UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL MASSEY,

      Petitioner,

   -vs-                       **No. 10-CV-0857(MAT)**
                                       **DECISION AND ORDER**

THE STATE OF NEW YORK,

      Respondent.
_____

## I.   Introduction

Petitioner <u>pro</u> <u>se</u> Michael Massey ("Massey" or "Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the basis that he is being unconstitutionally detained in Respondent's custody. Massey is incarcerated pursuant to a judgment of conviction entered against him following a jury trial on charges of second degree (intentional) murder and third degree criminal possession of a weapon.

## II.  Factual Background and Procedural History

Massey's conviction stems from the fatal stabbing of a man named Danny Mendez ("Mendez") on the night of October 3, 2006, in the City of Buffalo. The following is a summary of the pertinent trial evidence.

On the night of the incident, Krystian O'Sullivan ("O'Sullivan") was visiting her parents, whose house was located near a bar called Black Dog's Tavern. O'Sullivan saw a man she knew as Michael (i.e., Petitioner) walking around the block. T.107-111.[1]

---

[1] Citations to "T.___" refer to pages of the trial transcript.

At about 8:00 p.m., O'Sullivan heard yelling and turned around to see Petitioner with a man she knew as Danny (i.e., Mendez), who lived just across from her parents' house. The two men were in front of Mendez's house—Mendez was lying face down on the ground, while Petitioner was standing over him. As Mendez got up and started running down the street, Petitioner began chasing him.

Petitioner caught up with Mendez as he was trying to run in the other direction. As Petitioner swung at Mendez's torso, O'Sullivan saw a "glare" from something in Petitioner's hand. T.112-22.

Jenavieve Kill ("Kill"), another eyewitness, was walking near Black Dog's Tavern when she heard what sounded like fighting. Kill saw a man she believed to be her friend Devon's stepfather, whom she knew as "Scooter." Scooter was Petitioner's nickname. Petitioner, a/k/a Scooter, had what looked like a knife in his hand.

Kill left the area and walked back to the hospital, where she had been visiting her sister. Kill told her mother what she had seen and commented that she had seen Scooter. She and her mother informed hospital security guards, who called the police. T.50-65.

Amy Tatko ("Tatko") was tending bar at Black Dog's Tavern on the night of the incident. At about 7:30 p.m., Mendez ran inside and asked Tatko to call 911. Stating that he had been stabbed, Mendez showed Tatko a wound like a "slash mark" on his right abdomen where the skin was "flowered out." Suddenly Mendez yelled, "That's him! That's the guy who stabbed me! That's Scooter!" Tatko

turned to look in the direction in which Mendez was pointing and saw Petitioner. T.165-171, 188, 199.

By that point, Mendez had run behind the bar, and Tatko followed him. Frightened, Tatko told Petitioner to leave but he refused. Tatko then solicited the help of a patron named "Toaster". While Toaster escorted Petitioner out of the bar, Tatko called 911. During the phone call, Mendez collapsed against Tatko, uttering that he was in pain and that it hurt to breathe. Tatko tried to calm Mendez down by talking to him. While she was trying to call 911, Tatko's head was in her lap, and he was fading in and out of consciousness. Just before the firemen arrived, Mendez opened his eyes and said, "Amy, don't let me die." T.189-201.

Meanwhile, responding officer Mark Slawek received a description of the perpetrator upon arriving at the tavern. Officer Slawek apprehended Massey after a foot chase. T.255-59.

During the search of the area around the tavern, the police found a knife in a blue tarp on top of a stove in a nearby yard. The knife was submerged in a small amount of water and partially covered by leaves. It was determined that a friend of Petitioner's named Christopher Kraft lived at the residence where the knife was found. T.303, 312-317, 332-337.

The medical examiner concluded that Mendez died from a stab wound to the chest caused by a knife having one blunt end and one sharp end. The knife seized from Petitioner's friend's residence had such characteristics. T.449, 454-455.

The jury returned a verdict convicting Petitioner as charged in the indictment. He was sentenced to indeterminate, concurrent sentences, the longest of which was twenty five years to life for the murder conviction.

By an order dated April 24, 2009, the Appellate Division, Fourth Department, of New York State Supreme Court ("the Fourth Department") unanimously affirmed Petitioner's conviction, rejecting his claims on the merits. People v. Massey, 61 A.D.3d 1433 (App. Div. 4th Dept. 2009). The New York Court of Appeals denied leave to appeal. People v. Massey, 13 N.Y.3d 746 (N.Y. 2009).

This timely habeas petition followed. For the reasons set forth below, the petition is dismissed.

## III. General Legal Principles

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking habeas relief under 28 U.S.C. § 2254(a) must demonstrate, by preponderating evidence, that he is "in custody in violation of the Constitution or laws or treaties of the United States." See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in part, that a writ of habeas corpus shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of

the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or was an unreasonable determination of the facts in light of the evidence presented below. <u>See</u> 28 U.S.C. § 2254(d)(1), (2).

## IV. Analysis of the Petition

### A. Failure of the Prosecution to Disprove Petitioner's Justification Defense Beyond a Reasonable Doubt

Petitioner claims that the trial proof was legally insufficient to refute his justification defense and he thereby was deprived of his due process right to be convicted on evidence satisfying the reasonable doubt standard. In particular, Massey cites his statement to police wherein he alleged that it was Mendez who had attacked him with a knife after a fistfight had erupted between them.

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime." <u>In re Winship</u>, 397 U.S. 358, 364 (1970). When reviewing a state court conviction, a federal habeas court must consider whether there was "sufficient evidence to justify a rational trier of the facts to find guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 313 (1979) This standard applies with equal force to a defense that the prosecution is required to disprove beyond a reasonable doubt. <u>Ledesma v. Cunningham</u>, No. 03 Civ. 6322(LAK)(GWG), 2004 WL 1775677, at *11 (S.D.N.Y. Aug. 10, 2004) (Report and Recommendation adopted

on Aug. 10, 2004) (citing <u>Cross v. McGinnis</u>, Nos. 01-CV-3411 (JBW), 03-MISC-0066 (JBW), 2003 WL 21812024, at *6 (E.D.N.Y. July 23, 2003); <u>Morales v. Jones</u>, No. 86 CIV. 7799 (KC), 1988 WL 90379, at *2 (S.D.N.Y. July 26, 1988)).

Habeas corpus relief must be denied to a petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding if, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. at 319 (emphasis in original); <u>accord</u>, <u>e.g.</u>, <u>People v. Contes</u>, 60 N.Y.2d 620, 621 (N.Y. 1983). This sufficiency-of-evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." <u>Herrera v. Collins</u>, 506 U.S. at 402.

Under the <u>Jackson</u> standard for reviewing evidentiary sufficiency, "the assessment of the credibility of witnesses is generally beyond the scope of review." <u>Schlup v. Delo</u>, 513 U.S. 298, 330 (1995). The court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt . . . view[ing] the evidence in the light most favorable to the government, and constru[ing] all permissible inferences in its favor." <u>United States v. Carson</u>, 702 F.2d 351, 361 (2d Cir. 1983) (internal citations omitted), <u>cert.</u> <u>denied</u> <u>sub</u> <u>nom.</u> <u>Mont v. United States</u>, 462 U.S. 1108 (1983).

A federal court reviewing an insufficiency-of-the-evidence claim must look to state law to determine the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir.1999) (citation omitted), cert. denied, 528 U.S. 1170 (2000). Under New York law, "[a] person may . . . use physical force upon another person when and to the extent he reasonably believes such to be necessary to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by such other person." N.Y. PENAL LAW § 35.15(1). Deadly physical force may not be used unless the other person is using or about to use deadly physical force and the actor cannot avoid the use of deadly physical force by retreating. Id., § 35.15(2)(a). Furthermore, the actor cannot have been, except in very limited circumstances, the initial aggressor. Id., § 35.15(1)(a)-(b). Justification is a defense, not an affirmative defense. N.Y. PENAL LAW § 35.00. Accordingly, the prosecution bears the burden of disproving the defense beyond a reasonable doubt once it is raised on a proper evidentiary foundation. See N.Y. Penal Law § 25.00(1).

Massey essentially argues that his statement to the police established that his use of deadly physical force was justified. On appeal, the Fourth Department rejected this contention as follows:

> Although in his statement to the police defendant asserted that the victim brandished a knife during the altercation and thus may have died from self-inflicted wounds, three eyewitnesses testified to the contrary. We thus conclude with respect to legal sufficiency that the People met their burden of disproving defendant's justification defense beyond a reasonable doubt, i.e.,

they presented legally sufficient evidence establishing that the victim did not brandish the knife during the altercation and that defendant's use of deadly force was not justified (see Penal Law § 25.00(1); see generally [People v.] Danielson, 9 N.Y.3d at 349).

People v. Massey, supra. Massey's argument regarding the strength of his own version of events and the unbelievability of the States' eyewitnesses asks this habeas Court to make an assessment is not permitted to make, as it necessarily rests on questions of credibility and weight of the evidence, and therefore is a matter solely within the purview of the jury. See, e.g., Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal."). Thus, Massey's specific argument in support of his insufficiency claim is not properly reviewable in a habeas proceeding. Accord, e.g., Gonzalez v. Lape, 670 F. Supp.2d 254, 261 (S.D.N.Y. 2009) ("Given the facts adduced at trial, Gonzalez has not demonstrated that there was insufficient evidence to disprove whatever justification defense he may have had. Gonzalez's argument regarding the unreliability of the State's key witness testimony is the type of assessment that is not for this Court to make because it necessarily rests on questions of credibility and weight of the evidence, and therefore is a matter solely within the purview of the jury. Thus, Gonzalez's specific argument in support of his insufficiency claim is not reviewable in a habeas proceeding."); see also Glisson, 287 F. Supp.2d at 442. ("The jury was entitled to reject the statements of Petitioner and the defense's witnesses indicating that Petitioner

was not the initial aggressor, and that Petitioner faced deadly physical force. The jury's determination to credit the testimony of the prosecution's witnesses over Petitioner's witnesses "is precisely the sort of determination that a federal habeas court may not second guess.").

Based upon the evidence adduced at trial, a rational trier of fact could have found that the stabbing was not justifiable self-defense: a number of witnesses testified that they saw Massey stab Mendez; at the time of the stabbing Mendez was unarmed and had not attacked Massey; Mendez was attempting to extricate himself from the confrontation by running away; Petitioner did not avail himself of the opportunity to retreat; and there was no reasonable need for Petitioner to use deadly force when he stabbed Mendez in the back given that Mendez was fleeing. Cf. Brown v. Artuz, 124 F.3d 73, 81 (2d Cir. 1997) (holding that evidence at trial established beyond a reasonable doubt that the habeas petitioner did not have right to use deadly force, regardless of any prior provocation, because the petitioner was the only person with a gun, the victim was unarmed, and nothing in the record suggested that the victim had a weapon). It follows that a rational trier of fact could have concluded, based on the evidence at trial, that the prosecution had disproved beyond a reasonable doubt Petitioner's claim that he was justified in opening fire in the hallway on the tenth floor. Cf. People v. Smith, 271 A.D.2d 462, 463, 706 N.Y.S.2d 880, 880-81 (2d Dept. 2000) ("The People disproved the defense of justification beyond a reasonable doubt, as there was legally

sufficient evidence to support the conclusion that the defendant was the initial aggressor and the victim was unarmed."), appeal denied, 95 N.Y.2d 871, 715 N.Y.S.2d 226 (N.Y. 2000). In sum, the Court cannot say that the Fourth Department's resolution of Massey's insufficiency-of-the-evidence claim was an unreasonable application of the Jackson v. Virginia standard.   People v. Henry, 244 A.D.2d 424, 425, 664 N.Y.S.2d 315, 316 (2d Dep't 1997) (justification disproved where "the defendant was the initial aggressor and the victim was initially unarmed"), appeal denied, 91 N.Y.2d 874, 668 N.Y.S.2d 572 (1997).

**B.   Legally Insufficient Evidence of Intent**

Petitioner contends that his due process rights under Winship were violated because the prosecution failed to adduce legally insufficient evidence that he acted with intent to kill. Relatedly, Petitioner contends that the evidence was only sufficient to show that he acted with a lesser mens rea (recklessness) and intended only to cause serious injury-not death. These contentions are without merit. As the Fourth Department found, the necessary intent can be "inferred from defendant's conduct as well as the circumstances surrounding the crime[,]" People v. Massey, and in Massey's case, his "homicidal intent could be inferred from evidence that [he] plunged a knife deep into the victim's chest, in the direction and close vicinity of vital organs[.]" Id. (quotations omitted). The jury did not act irrationally in concluding that the prosecution had proven beyond a reasonable doubt that Massey acted with intent to kill, rather than merely

cause injury. Moreover, the jury arguably would have been acting irrationally if it had determined, on these facts, that Massey had only acted recklessly. See People v. Stanford, 87 A.D.3d 1367, 1368, 930 N.Y.S.2d 149, 150 (4th Dept. 2011) ("Furthermore, the number, depth, and placement of the victim's stab wounds were completely inconsistent with reckless rather than intentional conduct[.]")(quotation and citations omitted).

### C.  Verdict Against the Weight of the Evidence

Massey contends, as he did on direct appeal, that the verdict was against the weight of the credible evidence. The Appellate Division, exercising its statutory authority to review the facts and weigh conflicting inferences drawn therefrom, disagreed. People v. Massey.

Massey's "weight of the evidence" claim derives from New York Criminal Procedure Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." N.Y. CRIM. PROC. LAW § 470.15(5). Thus, a "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (N.Y.1987). Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on habeas review. See 28 U.S.C. § 2254(a) (permitting

federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); Estelle v. McGuire, 502 U.S. at 68 ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that such claims do not present any federal constitutional issues cognizable in a habeas proceeding. E.g., Ex parte Craig, 282 F. 138, 148 (2d Cir. 1922) (holding that "a writ of habeas corpus cannot be used to review the weight of evidence . . ."), aff'd, 263 U.S. 255, 44 S.Ct. 103, 68 L.Ed. 293 (1923); Mobley v. Kirkpatrick, 778 F. Supp.2d 291, 311-12 (W.D.N.Y. 2011). In keeping with these precedents, the Court finds that Massey's weight-of-the-evidence claim fails to present a cognizable constitutional question amenable to habeas review and must be dismissed on that basis.

**D.   Erroneous Evidentiary Ruling**

Massey contends that the trial court denied him of his due process right to a fundamentally fair trial by admitting testimony from Tatko, the bartender, that Mendez, the victim, upon running into Black Dog's Tavern and lifting his shirt to reveal his wounds, pointed at Petitioner and said that "Scooter" had stabbed him. T.199. On appeal, the Fourth Department held that the trial court properly admitted in evidence the victim's identification of

defendant and the statement of the victim that he had been stabbed under the "excited utterance" exception to the hearsay rule. <u>People v. Massey</u>, (citing <u>People v. Johnson</u>, 1 N.Y.3d 302, 306 (N.Y. 2003); <u>People v. Cotto</u>, 92 N.Y.2d 68, 78-79 (N.Y. 1998)). The Fourth Department went to hold that, in any event, the identification and statement were admissible hearsay under the "present sense impression" exception. <u>Id.</u> (citing <u>People v. Brown</u>, 80 N.Y.2d 729, 732 (N.Y. 1993)).

An "excited utterance" is recognized as a traditional exception to the hearsay rule under both New York and federal law. <u>See</u> <u>People v. Brown</u>, 70 N.Y.2d 513, 519-20 (N.Y. 1987); <u>Idaho v. Wright</u>, 497 U.S. 805, 814 (1990); FED. R. EVID. 803(2). It is defined as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." FED. R. EVID. 803(2); <u>see also</u> <u>People v. Brown</u>, 70 N.Y.2d at 519-20 (an excited utterance is "made 'under the stress of excitement caused by an external event' and not 'under the impetus of studied reflection'") (quotation omitted). Under the "present sense impression" exception, "spontaneous descriptions of events made substantially contemporaneously with the observations are admissible if the descriptions are sufficiently corroborated by other evidence." <u>People v. Brown</u>, 80 N.Y.2d at 734. Like Rule 803(1) of the Federal Rules of Evidence, the New York rule regard present sense

impressions "does not require a showing of the declarant's unavailability." People v. Buie, 86 N.Y.2d 501, 506 (N.Y. 1995).

It generally is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). "Erroneous evidentiary rulings do not automatically rise to the level of constitutional error sufficient to warrant issuance of a writ of habeas corpus. Rather, the writ would issue only where petitioner can show that the error deprived her of a fundamentally fair trial." Taylor v. Curry, 708 F.2d 886, 891 (2d Cir. 1983) (citing Chambers v. Mississippi, 410 U.S. 284, 302-03 (1973); see also Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988).

Mendez's out-of-court statement identifying Massey as his assailant fit within the parameters of the "present sense impression" exception to the hearsay rule as defined by New York courts, and therefore there was no error of state evidentiary law in its admission. See People v. Brown, 80 N.Y.2d 729, 735, 736 (N.Y. 1993) ("[W]e hold that spontaneous descriptions of events made substantially contemporaneously with the observations are admissible if the descriptions are sufficiently corroborated by other evidence. Further, such statements may be admitted even though the declarant is not a participant in the events and is an unidentified bystander. . . . [W]hen statements are admitted under the present sense exception without the assurance of reliability that excitement affords, it is reasonable and prudent to require

some additional indicia of reliability.") (citation omitted); accord, e.g., People v. Buie, 86 N.Y.2d at 505-06.[2]

Here, Mendez's statement to the effect that "Scooter" (i.e., Petitioner) had stabbed him was made moments after Mendez was stabbed, and was thus spontaneous and made contemporaneously with the event. The statement's spontaneity and contemporaneity were independently corroborated by much other evidence introduced by the prosecution. Furthermore, Mendez, the declarant, was unavailable, a factor which weighs in favor of admissibility of the statement. See People v. Buie, N.Y.2d at 506 (holding that "the present sense impression exception does not require a showing of the declarant's unavailability as a sine qua non to admissibility," although the trial judge may weigh the declarant's availability in the "traditional probativeness versus undue prejudice calculus" for determining admissibility). Thus, the trial court did not abuse its discretion in admitting the statement, which fell within the present sense impression exception to the hearsay rule.

The Court notes that this evidentiary ruling admitting Mendez's hearsay potentially implicates the Confrontation Clause, for the admission of a statement by an unavailable declarant may impinge upon the Sixth Amendment right of a criminal defendant to

---

[2] The New York Court of Appeals did not define the quantum of corroboration that would be sufficient, noting that it "will depend on the particular circumstances of each case and must be left largely to the sound discretion of the trial court," but nevertheless must be enough to "assure the court that the statements sought to be admitted were made spontaneously and contemporaneously with the events described." Brown, 80 N.Y.2d at 737.

cross-examine witnesses against him. In particular, the Court is mindful of Crawford v. Washington, 541 U.S. 36 (2004), which marked a sea-change in the Supreme Court's Confrontation Clause jurisprudence.[3]

Prior to Crawford, the Supreme Court interpreted the Confrontation clause to foreclose the introduction of hearsay statements unless they carried adequate indicia of reliability. Reliability could be inferred when the statements satisfied a firmly rooted exception to the hearsay rules, but otherwise, hearsay statements were admissible only if the state could demonstrate that the statements bore "particularized guarantees of trustworthiness." Ohio v. Roberts, 448 U.S. 56, 66 (1980). Under this standard, the trial courts would analyze whether the circumstances surrounding the making of the statement rendered the statement worthy of belief. See Idaho v. Wright, 497 U.S. at 819.

In Crawford, the Supreme Court changed course, holding that the Framers of the Constitution intended that out-of-court "testimonial" statements be excluded from trial unless the declarant was unavailable for trial, and the defendant had a prior opportunity to cross-examine the declarant. 541 U.S. at 68. The Court also noted that not all out-of-court statements were governed

---

[3]

   Crawford is applicable to Massey's claim because the case was decided long before Massey's conviction became final. See Whorton v. Bockting, 549 U.S. 406, 127 S. Ct. 1173, 1181 (2007) (Crawford announced a new rule of criminal procedure); Teague v. Lane, 489 U.S. 288, 310 (1989) (new constitutional rules of criminal procedure are inapplicable to cases that become final before new rules are announced).

by the Confrontation Clause, id. at 51, but made clear that the new test delineated in Crawford replaced the Roberts firmly rooted/particularized guarantee of trustworthiness test for testimonial statements. Id. at 68. The touchstone of the inquiry under Crawford was whether the statements were "testimonial" or not, but Crawford declined to spell out a comprehensive definition of "testimonial."  The examples it gave of "testimonial" statemens were a preliminary hearing, grand jury testimony, testimony at a former trial, and police interrogations. Id.

Two years later, in Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court was asked to consider whether the statements made or elicited during a 911 emergency call are "testimonial" within the meaning of Crawford. The Supreme Court announced the following test:

> Statements are not testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis, 547 U.S. at 822. Davis  thus made clear that the Confrontation Clause can only be used to exclude out-of-court testimonial statements and that it does not apply to nontestimonial statements. See United States v. Williams, 506 F.3d 151, 157 (2d Cir. 2007); United States v. Feliz, 467 F.3d 227, 231 (2d Cir. 2006).

Here, Mendez's statement is plainly nontestimonial. It was made to an acquaintance at a bar with no intervention of the police or other type of governmental authorities. It was neither solicited by any law enforcement officers nor made in the context of any government investigation. It does not bear any of the hallmarks of testimonial statements identified by the Supreme Court in Crawford, such as "ex parte in-court testimony, extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." Crawford, 541 U.S. at 51-52 (citations omitted). See Ko v. Burge, No. 06 Civ. 6826(JGK), 2008 WL 552629, at *10 (S.D.N.Y. Feb. 26, 2008) (admission of deceased victim's statement to a friend, "It's [Petitioner], I've got to go", under the present sense impression exception to the hearsay rule, did not run afoul of Crawford because it was not testimonial).

Because the admission of nontestimonial hearsay is not barred by the Confrontation Clause after Davis, any claim by Massey that the admission of Mendez's out-of-court statement violated the Confrontation Clause has no merit. See Williams, 506 F.3d at 157 ("Because the Confrontation Clause does not bar such nontestimonial statements, whatever their guarantees of trustworthiness . . . our Confrontation Clause inquiry is at an end.").

**D.    Erroneous    Pre-Trial    Ruling    Regarding    Scope    of Prosecution's Cross-Examination of Petitioner**

Massey contends that the trial court's <u>Sandoval</u>[4] ruling was erroneous and deprived him of the right to participate in his own defense by testifying. Habeas courts in this Circuit have held that such claims are barred from habeas review where, as here, the petitioner fails to actually take the stand at trial <u>E.g.</u>, <u>Grace v. Artuz</u>, 258 F. Supp.2d 162, 171-72 (E.D.N.Y. 2003) (in absence of petitioner taking the stand to testify at trial, "petitioner's claim as to the impropriety of the Sandoval ruling [did] not raise a constitutional issue cognizable on habeas review") (citing <u>Carroll v. Hoke</u>, 695 F. Supp. 1435, 1440 (E.D.N.Y. 1988)) <u>aff'd</u>, 880 F.2d 1318 (2d Cir.1989) (citing <u>Luce v. United States</u>, 469 U.S. 38, 43 (1984) (holding that in order "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify")).

In <u>Luce</u>, which was a direct appeal of a federal criminal conviction, the Supreme Court held that an <u>in limine</u> ruling allowing impeachment of a defendant by use of a prior conviction did not present a question of constitutional dimension and was not reviewable on appeal unless the defendant testified. <u>Luce</u>, 469 U.S. at 43. The Supreme Court declared that any possible harm flowing

---

[4]    Pursuant to <u>People v. Sandoval</u>, 34 N.Y.2d 371 (N.Y. 1974), a defendant is entitled to an in limine ruling setting forth the extent to which the prosecution may cross-examine him regarding prior crimes and bad acts bearing on his credibility, veracity or honesty, should he choose to testify.

from a trial court's <u>in</u> <u>limine</u> ruling permitting impeachment by a prior conviction was "wholly speculative" and observed that the ruling is "subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the defendant's proffer." <u>Id.</u>

Although Massey's case involves the collateral review of a state trial court's <u>Sandoval</u> ruling and <u>Luce</u> involved the direct review by a Circuit Court of Appeals of a federal trial court's ruling pursuant to Rule 609 of the Federal Rules of Evidence, the rationale of <u>Luce</u> is equally apposite here. Both a <u>Sandoval</u> ruling and a Rule 609 ruling seek to balance the prejudicial impact of the prior conviction against its value as impeachment testimony. <u>Compare</u>, <u>People v. Sandoval</u>, 357 N.Y.S.2d at 853-54, <u>with</u> Fed. R. Evid. 609. In both cases the defendant's failure to testify makes it impossible to test the propriety of the ruling. <u>See</u> <u>Luce</u>, 469 U.S. at 43 ("A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.") (footnote omitted). Finally, the Supreme Court observed, "[b]ecause an accused's decision whether to testify 'seldom turns on the resolution of one factor,' <u>New Jersey v. Portash</u>, 440 U.S.

450, 467 (1979) (Blackmun, J., dissenting), a reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify." <u>Luce</u>, 469 U.S. at 43.

The clear weight of the authority holds that a petitioner's failure to testify at trial precludes habeas review of a <u>Sandoval</u> claim. For the foregoing reasons, the Court dismisses Massey's claim of an erroneous <u>Sandoval</u> ruling as not cognizable.

## V. Conclusion

Michael Massey's request for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied and the petition is dismissed. The Court declines to issue a certificate of appealability as Massey has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); <u>Lucidore v. New York State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000). The Court hereby certifies that any appeal from this order would not be taken in good faith and therefore leave to proceed <u>in forma pauperis</u> on appeal is denied. <u>See Coppedge v. United States</u>, 369 U.S. 438, 444 (1962).

**IT IS SO ORDERED.**

S/Michael A. Telesca

_____
          MICHAEL A. TELESCA
        United States District Judge

Dated:      December 13, 2011
            Rochester, New York